JACK CARROLL BODIFORD v. STATE.

No. 26,156. January 14, 1953.

*Robert B. Allen, Hugh B. Street,* and *Robert H. Stinson,* all of Dallas, for appellant.

*Henry Wade,* District Attorney, *Fred Bruner* and *Charles*

*S.. Potts,* Assistants District Attorney, and *George P. Blackburn,* State's Attorney, Austin, for the state.

WOODLEY, Judge.

Appellant was charged with the murder of his wife. The jury found him guilty and assessed his punishment at fifty years in the penitentiary.

Appellant and the deceased were married on November 26, 1951. They separated in January of 1952. On February 2, 1952, the defendant arranged to meet a man by the name of Cranford Gibson at the Hollywood Club, located just outside of Grand Prairie, Texas. Gibson was with appellant's wife, as a friend of both. The three met at the Hollywood Club at about 8:30 in the evening. They stayed there together, dancing and drinking, until shortly before midnight. Gibson and the deceased left together to meet appellant at the Pullman Cafe, a short distance from the Hollywood Club. The three of them sat in a booth at the Pullman Cafe drinking coffee. After a while appellant and his wife went to his car, which was parked outside the cafe. They had been in the car for some fifteen or twenty minutes when several shots were heard. The deceased was found to have been shot in the neck and chest, as a result of which she died. Appellant admitted to Gibson and to the officers that he fired the shots. The pistol delivered by appellant to Gibson, and by him to the officers, was found to contain only empty shells, all six having been fired.

After the state had closed, appellant presented a motion reciting that he expected to testify as a witness in his own behalf; that while in the Navy he was tried and convicted by court martial for being absent without leave and was sentenced to six months in a penal institution, and was given a Bad Conduct Discharge. He sought by his motion to have the court instruct the attorneys for the state not to inquire into nor to refer to or mention such conviction or discharge on cross-examination of appellant. The motion was granted and the instruction given as requested.

Bill of Exception No. 1 complains that, notwithstanding the granting of his motion and the instruction of the court, one of the attorneys representing the state asked appellant on cross-examination what kind of discharge he received from the Navy. Appellant contends that the asking of such question constitutes

reversible error, though the trial court promptly sustained his objection to such question.

Appellant had served two enlistments in the Navy, having been first discharged in 1946. He re-enlisted in 1948 and the Bad Conduct Discharge was issued in 1951. When the question was asked regarding the discharge appellant was under cross-examination concerning his first enlistment. This being brought to the attention of appellant's counsel, the objection was withdrawn and the question does not appear to have been answered.

No exception was reserved to the asking of the question, appellant apparently being satisfied with the explanation made to the effect that the question related to the first enlistment. Also the jury was instructed to disregard the question. Reversible error is not shown by this bill.

Bill of Exception No. 2 complains that when the objection was made to the question as to the kind of discharge appellant had received one of the attorneys for the state remarked: "Do you have something to hide, gentlemen."

This improper remark of counsel was objected to and the court promptly sustained the objection and cautioned counsel against side-bar remarks. He also instructed the jury to disregard the remark. No exception was reserved and we must assume that appellant was satisfied with the court's ruling and instruction. If not it was incumbent upon him to reserve exception to the improper remark.

Bill of Exception No. 3 complains of the testimony of Mrs. Randolph to the effect that in December, 1951, the deceased "worked at Mangel's to get money to buy her baby something for Christmas."

Appellant had testified that he was the sole support of his wife while they were married and that she never worked during that time. It is contended that Mrs. Randolph's testimony was solely for impeachment purposes and was inadmissible because it was on an immaterial and collateral matter.

In qualifying this bill the trial court notes that appellant also testified on his direct examination that his wife, the deceased, had no source of revenue that he knew of. Appellant having gone into the matter of his wife's resources and income,

we see no error in permitting the state to show that she was employed temporarily.

Bill of Exception No. 4 complains of the testimony of Mrs. Gould to the effect that appellant had told her that he had previously been married and had a child.

Appellant testified that he had never been married before he married the deceased, and denied that he had made the statement to Mrs. Gould that he had been previously married and had a child. It is contended that Mrs. Gould's testimony amounts to impeachment on an immaterial and collateral matter.

It is well settled that a witness may be impeached by proof of statements made by him out of court contrary to what he has testified at the trial, but only upon such matters as are relevant to the issue. See Coons v. State, 152 Tex. Cr. R. 479, 215 S.W. 2d 629, citing Henderson v. State, 1 Tex. App. 432.

If the testimony of appellant to the effect that he had not been previously married was immaterial and irrelevant, then it was not admissible and could have been excluded upon objection being made by the state. If it was relevant and material to appellant's defense, then the impeachment was proper.

As we understand appellant's defense he sought only to show a lack of malice in the murder of his wife, and hoped to obtain at the hands of the jury a suspended sentence. To this end he testified that he had not been previously married, was deeply in love with his wife whose affections he had been unable to hold; that he was attempting to persuade her to return to him and, at the time of the killing, "went blank" when she informed him that she was in love with Johnson and thought that she was pregnant by him.

We think that appellant's testimony to the effect that he had not been previously married was material and relevant to this explanation of his act in killing his wife. It follows that the court did not err in permitting the state to offer evidence to contradict such testimony.

The evidence is deemed sufficient to sustain the conviction and no reversible error appears.

The judgment is affirmed.